IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEWEY FOSTER, #217895, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | CIVIL ACTION NO. 2:03-CV-835-F |
| ) | WO |
| ) | |
| JEROME BURNEY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Dewey Foster ["Foster"] contends that the defendants deprived him of due process during disciplinary proceedings initiated against him at the Bullock Community Based Facility ["BCBF"] for his violation of Rule #47, escape without force.[1] Foster argues that this disciplinary resulted from his entrapment by the defendants and their false accusations against him. He also complains that when they issued this disciplinary, the defendants committed slander and retaliated against him for observing a drug transaction between an inmate and correctional officer. Seeking a declaratory judgment, injunctive relief and monetary damages, Foster names as defendants correctional officers Jerome Burney and Kelvin Tippett along with Warden Jhiles [sic][2]

---

[1] The BCBF is a work release facility located in Union Springs, Alabama.

[2] Although the plaintiff designates Ms. Jhiles as the warden of the BCBF, the correct name of this individual is Sandra Giles. However, for purposes of this Recommendation, the court will refer to this defendant as she is identified by the plaintiff.

The defendants filed a special report and supporting evidentiary materials addressing the plaintiff's claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. *See Order of October 3, 2003 - Court Doc. No. 7*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof and the plaintiff's responses in opposition to the motion, the court concludes that the defendants' motion for summary judgment is due to be granted.

## I. FACTS

On December 2, 2002, Foster checked out from the BCBF under the pretense of attending his job in Troy, Alabama at Henderson, Black and Green. However, upon arrival of the last transport van at approximately 5:40 p.m., Foster did not return to the correctional facility. Sgt. Burney conducted an investigation and determined that "inmate Foster had checked out" for his assigned job on this date but failed to return to the BCBF. *Defendants' Exhibit E - Institutional Incident Report No. 02-056* at 1-2. Supervisors at Henderson, Black and Green advised correctional officials that "they had not seen inmate Foster." *Id*. at 2. In light of the plaintiff's failure to return to the correctional facility and after a search of the facility failed to locate Foster, Sgt. Burney "placed [him] on escape." *Id*. Defendant Burney also initiated disciplinary action against the plaintiff for a violation of Rule #47, escape without force. On December 3, 2002, the human resources manager for Henderson, Black and Green advised Lt. Etheridge that "inmate Foster was not scheduled to work on 12/2/02,

2

but the Center was not notified." *Defendants' Exhibit E - Institutional Incident Report No. 02-056 at 2.*

During the morning hours of December 4, 2002, Lt. Etheridge "observed a white male exiting a vehicle in front of the Administrative Trailer" at the BCBF and "recognized the individual as inmate Dewey Foster . . ., who had been placed on escape on 12/2/02. Lt. Etheridge approached inmate Foster . . . [and] asked inmate Foster where he had been. Inmate Foster stated that on 12/2/02, he was helping a female fix the fan belt on her vehicle. He later asked the female for the time and she stated that the time was 7:00 P.M. Inmate Foster further stated that he panicked and went into the woods and sat for a while and later caught a ride near Montgomery." *Defendants' Exhibit J - Institutional Incident Report No. 02-057 at 1.* At approximately 3:35 p.m. on December 4, 2002, officer Irene Tellis served Foster with notice of the disciplinary for escape. The disciplinary charged that "[o]n 12/2/02, inmate Dewey Foster checked out to his assigned job at Henderson, Black and Green. Inmate Foster was not scheduled to work on this date. Inmate Foster failed to return to the Facility. Inmate Foster was recaptured on 12/4/02, when he was returned to the Center by a female friend." *Defendants' Exhibit D - Disciplinary Report No. 02-056 at 1.*

Prior to beginning the disciplinary hearing, the hearing officer, defendant Kelvin Tippett, noticed that line 3 of the disciplinary listed the time of the offense as 5:40 a.m., rather than the appropriate time of 5:40 p.m. for the escape. Tippett also noticed that the pre-printed portion of this line had not been updated and still referenced the year as 2001.

3

Defendant Tippett therefore corrected these errors to reflect that the escape at issue occurred on December 2, 2002 at 5:40 p.m. After these corrections, this portion of the disciplinary charge mirrored the "[c]ircumstances of the violation" set forth in the disciplinary. *Defendants' Exhibit D - Disciplinary Report No. 02-056* at 1. Tippett advised Foster of these corrections. Since that portion of the disciplinary identifying the circumstances of the offense always correctly notified Foster of the specific facts underlying the charge against him, defendant Tippett conducted the evidentiary hearing on this charge as scheduled.

Defendant Burney, the arresting officer for purposes of the disciplinary charge, testified that "[o]n 12-2-02, inmate Foster checked out to his assigned job at Henderson, Black and Green. Inmate Foster failed to return to the facility at the end of his shift. Inmate Foster was recaptured on December 4, 2002, when a female friend returned him to the center." *Defendants' Exhibit D - Disciplinary Report No. 02-056* at 1. The plaintiff testified on his own behalf as follows:

> I was scheduled to work on Dec. 2, 2002. I went to work with my boss. When I got there we just dranked coffee. An older lady had a belt to fly off her car. I went to help her because she couldn't raise the hood, so I helped her. I asked her what time it was and she told me 7:32 a.m. I am suppose to clock in at [7]:00 a.m., I ran up the hill to get to work and I panicked. [I] never did clock in because I was scared. I went to the woods and broke down and cried. All I could think was get some help. I thought they had the police there waiting to arrest me. I got hold of my friend, Cindy Pickett, and she [brought] me back to the center. She really didn't have any money to get to Troy. She lives in Prattville. On Tuesday, I slept under a bridge. On Wednesday, Cindy picked me up and brought me back [to the work release] center.

*Id.* at 2-3.

Based on the testimony presented, the hearing officer found Foster guilty of violating Rule #47.[3] The hearing officer based his finding of guilt on the testimony of the arresting officer "who stated under oath that inmate Foster failed to return to the facility at the end of his shift . . . [o]n 12-2-02." *Id.* at 2. The testimony of the plaintiff also supports this finding as Foster concedes that he "panicked [and] never clocked in" for work on December 2, 2002, hid in the woods, slept under a bridge one night and did not return to the BCBF until December 4, 2002. *Defendants' Exhibit D - Disciplinary Report No. 02-056* at 2-3. The sanctions imposed upon the plaintiff for this disciplinary infraction included forty-five (45) days of both extra duty and loss of visitation, loss of two years and five months of good time and referral for custody review. *Id.* at 2.

On January 2, 2003, a correctional officer served Foster with a reclassification notice informing him that a classification hearing would be conducted to determine whether his classification level should be increased from community custody to medium custody. *See Defendants' Exhibit O - 24 Hour Advance Notification of Pending Reclassification.* The notice expressly informed Foster that the pending reclassification concerned his "escaping on 12/2/02 from Bullock [Work Release] - you checked out for work -left & came back 2

---

[3] The plaintiff asserts that the hearing officer actually determined that he "did return to [the] center" on December 2, 2002. *Defendants' Exhibit D - Disciplinary Report No. 02-056* at 2. However, it is patently clear that this defendant made no such finding and that in adjudging Foster "guilty" of escape defendant Tippett merely omitted the word "not" when he wrote that Foster "did return to [the] center at the end of his shift." The sentence immediately following the alleged not guilty finding demonstrates the omission because defendant Tippett states that "Inmate Foster left his assigned job on 12-2-02 and was later recapture[d] on 12-4-02, when he was returned to the center by a female friend." *Id.* Additionally, the factual basis for the finding of guilt completely undermines the plaintiff's assertion.

5

days later." *Id*. The notice further advised Foster that he would "be given an opportunity to be heard, to present witnesses and to present documentary evidence." *Id*. Foster signed the notice and indicated that he "waive[d] the 24 hr. notice" for reclassification. *Id*.

On January 3, 2003, correctional officials conducted a reclassification hearing. The classification specialist presented details from Foster's December 2, 2002 escape as evidence warranting an increase in his custody classification. *See Defendants' Exhibit P*. Although given the opportunity to do so, Foster presented nothing to refute the information regarding his escape. Upon completion of the reclassification hearing, the classification committee relied on Foster's escape and recommended that Foster be reclassified to medium custody and transferred from the BCBF to a more secure correctional facility. *Id* The Central Review Board approved these recommendations.

## II. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence which would be admissible at trial supporting his constitutional claim. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."

*Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-85 (11th Cir. 1996) .

Although factual inferences must be viewed in a light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, the plaintiff has failed, after being afforded an opportunity to do so, to go beyond the pleadings and present evidence necessary to establish that there is a genuine issue of material fact in order to preclude

summary judgment.

### III. DISCUSSION

#### A. The Due Process Claims

Foster complains that the defendants denied him due process in his disciplinary hearing. In support of this claim, Foster contends that the line stating the findings of fact indicates that he did return from his job. He further argues that the defendants fabricated the charge against him and the evidence did not support a finding of guilt. The defendants dispute these claims in their affidavits and supporting evidentiary materials. Specifically, they maintain that Foster received all process to which he was entitled during the disciplinary proceeding.

In the context of a prison disciplinary proceeding, the United States Supreme Court determined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). that the Fourteenth Amendment's Due Process Clause requires at least three procedural protections. Under *Wolff*, a prisoner is entitled to receive (1) advance, written notice of the charges against him, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his own behalf, and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. The requirements of due process are satisfied if "some evidence" supports the decision of the disciplinary hearing officer. *Superintendent v. Hill*, 472 U.S. 445 (1985). It is not the function of this court to assume the task of retrying prison disciplinary disputes and no *de novo* review of a

hearing officer's factual findings is required when the decision is supported by some evidence. *Smith v. Rabalais*, 659 F.2d 539 (5th Cir. 1981).

The disciplinary record for the plaintiff's violation of Rule #47 reflects that Foster received advance, written notice of the charge against him. *See Defendants' Exhibit D - Disciplinary Report No. 02-056* at 1.  Officer Tellis served Foster on December 4, 2002, with a copy of the disciplinary charge which notified Foster of the circumstances of the charge as follows: "On 12/2/02, inmate Dewey Foster checked out to his assigned job at Henderson, Black and Green. . . . Inmate Foster failed to return to the Facility.  Inmate Foster was recaptured on 12/4/02, when he was returned to the Center by a female friend." *Id*.  During the disciplinary hearing on December 10, 2002, the hearing officer, defendant Tippett, heard testimony from defendant Burney, the officer who initiated the disciplinary action, and the plaintiff. Foster admitted that he did not return to the BCBF on December 2, 2002 and remained away from the facility until December 4, 2002 when a female friend returned him to the facility. *Id*. at 2-3.  Consequently, all of the testimony presented at the disciplinary hearing established that Foster escaped without force on December 2, 2002.

A review of the disciplinary report demonstrates that the disciplinary proceeding comported with all the requirements of *Wolff*.  Correctional officials furnished Foster with advance, written notice of the charge against him, allowed him the opportunity to call witnesses and present documentary evidence in his own behalf, and provided a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary

action. *See Defendants' Exhibit D - Disciplinary Report No. 02-056.* Nothing more is required by the Constitution. It is therefore clear that the plaintiff received all the process to which he was due in this disciplinary proceeding.

To the extent Foster complains that the evidence failed to support the hearing officer's finding of guilt, he is likewise entitled to no relief. It is well-settled law that a prison disciplinary will not be overturned if "some evidence" supports the decision by the hearing officer. *Superintendent v. Hill*, 472 U.S. 445 (1985); *see also Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981), *cert. denied*, 445 U.S. 992 (1982). Under this standard, while a *de novo* review of a disciplinary officer's factual finding is not required, the court has a duty to consider whether the decision is, at the least, supported by some facts. *Id.* The court, upon its review of the pleadings and documents filed in this case, concludes that the testimony of defendant Burney and the plaintiff constituted "some evidence" on which the hearing officer could base his finding of guilt. Thus, Foster is entitled to no relief on his insufficient evidence claim.

In light of the foregoing, the court concludes that the defendants are entitled to summary judgment on the plaintiff's due process claims.

### B. The Fabricated Charge Claim

Foster asserts that the disciplinary charge lodged against him resulted from false accusations and fabrications of the defendants. In support of this claim, the plaintiff

maintains that the defendants disciplined him for an "event that never occurred." *Plaintiff's Complaint* at 3. The defendants maintain that the escape charge is based on the facts surrounding Foster's behavior on December 2, 2002 and his failure to return to his assigned correctional facility on this date. It is therefore clear that the defendants do not admit that the information contained in the disciplinary is either fabricated or false. While *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), establishes a constitutional claim for the knowing use of false information by prison officials, the instant case is controlled by *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.1982). In *Slocum*, the Court held that prisoners do not state a due process claim by merely asserting that erroneous information may exist in their prison files. Moreover, "prisoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim." *Jones v. Ray*, 279 F.3d 944, 946 (11th Cir. 2001). Foster merely asserts that the defendants based the disciplinary on false information. This does not state a claim for relief and the defendants are therefore entitled to summary judgment.

### C. The Slander Claim

The plaintiff complains that correctional officials committed slander when they charged him with escape. The law is well settled that a 42 U.S.C. § 1983 action cannot be predicated upon the theory of slander or defamation. *Paul v. Davis*, 424 U.S. 693 (1976); *see also Von Stein v. Brescher*, 904 F.2d 572 (11th Cir. 1990). Thus, this claim for relief is frivolous as it is "based on an indisputably meritless legal theory[,]" *see Neitzke v. Williams*,

490 U.S. 319, 327 (1989), and summary judgment is due to be granted in favor of the defendants.

### D. Retaliation

Foster makes the conclusory allegation that "[t]he disciplinary was retaliatory against me for seeing the drug transaction between the officer and a inmate . . ." *Plaintiff's October 22, 2003 Response* at 4.[4] The defendants, however, maintain that Foster received the disciplinary solely due to his failure to return to the BCBF from his assigned job on December 2, 2002.

The method of establishing a retaliation claim is essentially the same as that for a claim of race or sex discrimination. *Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 600-601 (11th Cir. 1986). Specifically, an inmate has the initial burden of setting forth a prima face case of unlawful retaliation by a preponderance of the evidence, which once established raises a presumption that the prison official retaliated against the inmate. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). To establish a prima facie case, an inmate must show that he had engaged in a constitutionally protected activity; that he suffered an adverse treatment simultaneously with or subsequent to such activity; and that a causal link exists between the protected activity and the adverse treatment. *Donnellon*, 794 F.2d at 600-601. If an inmate establishes a prima facie case, the burden then shifts to prison

---

[4]The plaintiff does not identify the individuals involved in this alleged drug transaction nor does he assert that he reported this incident to any of the defendants.

officials to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the prison official retaliated against the inmate. This may be done by the prison official articulating a legitimate, non-retaliatory reason for the adverse decision or action, which is clear, reasonably specific and worthy of credence. The prison official has a burden of production, not of persuasion, and thus does not have to persuade a court that he or she actually was motivated by the reason advanced. *Burdine*, *supra*. Once the prison official satisfies this burden of production, the inmate then has the burden of persuading the court that the proffered reason for the adverse decision is a pretext for retaliation. An inmate may satisfy this burden by persuading the court either directly that a retaliatory reason more than likely motivated the prison official or indirectly that the proffered reason for the adverse decision is not worthy of belief.

    For purposes of this Recommendation, the court will assume, without deciding, that Foster carried his initial burden of presenting prima facie proof of retaliation. However, the defendants advanced a legitimate, nondiscriminatory reason for issuance of the disciplinary. Specifically, the defendants argue and the evidentiary materials demonstrate that Foster received the disciplinary due to his failure to return to his place of incarceration on December 2, 2002. This reason is sufficient to rebut the plaintiff's prima facie case. The plaintiff has presented only his suppositious allegation that the defendants acted in retaliation. This is insufficient to show that the reason proffered by the defendants and substantiated by the record is pretextual. The court therefore concludes that no retaliatory motive existed for

issuance of the disciplinary. Consequently, the defendants are entitled to summary judgment on this claim.

### E.  Custody Classification

Foster complains that the defendants violated his due process rights when they increased his custody classification and removed him from work release. Under the facts and circumstances of this case, due process entitled Foster to "an informal, nonadversary evidentiary review" conducted with a design toward determining whether reasonable cause existed to increase his custody classification. *Hewitt v. Helms*, 459 U.S. 460, 476-477 (1983) (requiring some notice to inmate of reason for adverse action and an opportunity for him to express views). A hearing to determine whether an inmate should be removed from work release is not a criminal proceeding in which the full panoply of due process rights must be accorded. Moreover, the Constitution does not require that this informal review comport with all the procedural safeguards set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Hewitt*, 459 U.S. at 477.

"The fundamental requisite of due process of law is the opportunity to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970). "An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). The process provided to Foster with respect to his reclassification

satisfied the requirements of due process mandated by the Constitution. Correctional officials provided the plaintiff notice of the impending reclassification hearing, advised him of the conduct on which the increase in classification would be based and allowed him an opportunity to be heard on this matter. After reviewing the evidentiary materials, including details of the December 2, 2002 escape, and allowing Foster an opportunity to present evidence, the hearing committee recommended that Foster be reclassified to medium custody and transferred to a more secure facility. The Central Review Board accepted this recommendation. The court therefore concludes that the reclassification proceeding more than satisfied the requirements of due process. *See Hewitt v. Helms, supra.* Summary judgment is therefore due to be granted in favor of the defendants.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. This case be dismissed with prejudice.

3. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before September 6, 2005 the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive

or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 24th day of August, 2005.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE